**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DR. LATIKA GIRI, on behalf of herself and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE NATIONAL BOARD OF MEDICAL EXAMINERS, c/o CT Corporation System, 1015 15th Street NW, Suite 1000, Washington, DC 20005 <br><br> Defendants. | Case No. 24-cv-410 <br> CLASS ACTION <br> JURY TRIAL DEMANDED |

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**
**UNDER RULE 23(B)(2) AND MEMORANDUM OF POINTS AND**
**AUTHORITIES IN SUPPORT**

## **TABLE OF CONTENTS**

I.     BACKGROUND AND PRELIMINARY STATEMENT ..................................... 1

II.    PROPOSED CLASS ........................................................................................... 3

III.   ARGUMENT .................................................................................................... 4

       A.     The Requirements of Rule 23(a) Are Met .................................................. 4

       B.     The Requirements of Rule 23(b)(2) Are Met .......................................... 8

IV.    CONCLUSION .................................................................................................. 9

## MOTION AND RELIEF REQUESTED

Plaintiff respectfully submits this motion to certify a class action under Federal Rule of Civil Procedure 23(b)(2).[1] Plaintiff seeks to represent a class of approximately 800 Nepali doctors whose scores on the medical boards were immediately invalided by Defendant National Board of Medical Examiners ("NBME") on January 31, 2024, explicitly because they were "associated with Nepal," in explicit departure from the procedures NBME applies to test-takers from anywhere else in the world about whose scores it has concerns. This violates Title VII, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981, and it had the same effect on all members of the proposed class: namely, immediate cancellation of their medical board scores.

## I.   BACKGROUND AND PRELIMINARY STATEMENT

The facts described here in are taken from Plaintiff's class action complaint. ECF 1 ("Complaint" or "Compl."). Every year, Defendant National Board of Medical Examiners administers the U.S. Medical Licensing Exam (colloquially known as the Boards) to more than 24,000 graduates of U.S. medical schools and another 22,000 graduates of foreign medical schools. For years, cheating has been, as a recent news

---

[1] Plaintiff also plans to submit a Motion for Class Certification Under Rule 23(b)(3) for damages at an appropriate time. For the purposes of obtaining immediate emergency injunctive relief, Plaintiff seeks immediate certification or preliminary classwide relief during the pendency of this motion. *See, e.g.*, *Dodge v. Cnty. of Orange*, 209 F.R.D. 65, 78 (S.D.N.Y. 2002) (certifying a 23(b)(2) class because "[i]f plaintiffs succeed on the merits of their claim, injunctive relief would be both reasonably necessary and appropriate"); *J.O.P. v. U.S. Dep't of Homeland Sec.*, 409 F. Supp. 3d 367, 376 (D. Md. 2019) ("[C]ourts may enter class-wide injunctive relief before certification of a class." (citing Newberg on Class Actions § 4:30 (5th ed. 2013).

article put it, "rampant." Still for people from all over the world NBME handles suspicions of cheating through a process that provides the suspected test-taker notice, an opportunity to be heard, an investigation, and a right to appeal. During that process, the suspected test-taker's score is treated as valid. Compl. ¶ 1.

But on January 31, NBME emailed a "subset" of test-takers to tell them that, in explicit departure from ordinary procedures, their scores were immediately invalid and that they had until February 16 to choose from three options: appeal, with the burden of persuasion on the test-taker, which would take at least ten weeks; re-take the test in mid to late 2024, restricted to a date and location of the USMLE program's choosing; or forfeit the right to sit for the USMLE, and therefore, in many cases, to practice medicine in the U.S., for the next three years irrevocably. *Id.* ¶ 2. Because of the schedule of medical-residency matching, all three options result in graduates whose scores on the first two steps of the three-step exam process were invalidated being unable to practice medicine for at least a year. NBME requires test-takers to waive their right to sue NBME to either re-take the exam or ask NBME to consider its decision to revoke test-takers' scores. All three options force many people to abruptly leave the country within 30 days and cause every affected person to lose their jobs or the opportunity to seek a job. Compl. ¶¶ 2, 37-40. Even worse, NBME has pre-emptively canceled scores on a groupwide, not individualized, basis even while it acknowledges that the investigation is "ongoing." Decl. of Jason Harrow, ECF 3-4, ¶ 5.

NBME left no doubt about how it chose the "subset" of test-takers to which it would apply its new, harsh procedural regime: In a press release, NBME explained—not just to affected doctors, but to the world writ large—that its new policies applied to about 800 test-takers "associated with Nepal." Compl. ¶ 3.

Plaintiff Dr. Latika Giri is one of the doctors whose test scores were immediately invalidated by the NBME on January 31, 2024 on the explicit basis that she is "associated with Nepal." *Id.* ¶ 4. She is associated with Nepal because she is Nepali, as are the overwhelming majority of test-takers "associated with Nepal." *Id.* She brings a claim on behalf of herself and the approximately 800 other doctors whose scores were invalidated in this way against Defendant for violations Title VII of the Civil Rights Act of 1964 and Section 1981 of the Civil Rights Act of 1866. Because Dr. Giri seeks an immediate and permanent injunction preventing further harm from Defendant's discriminatory policy, she brings this motion to certify the class under Rule 23(b)(2) of the Federal Rules of Civil Procedure. As explained below, all necessary requirements to grant class certification under Rule 23(b)(2) are met.

## II.   PROPOSED CLASS

Plaintiff proposes to certify a Rule 23(b)(2) class of all individuals who meet the following definition:

> All USMLE test-takers whose scores were immediately invalidated under the procedures for the "subset" of test-takers described in the document captioned "United States Medical Licensing Examination (USMLE) Policies and Procedures Regarding the Validity of Passing Level Scores Achieved by a Subset of USMLE Examinees."

This class meets Rule 23(a)'s requirements of numerosity, commonality, typicality, adequacy, and 23(b)(2)'s requirement that injunctive will provide a remedy to the class as a whole.

## III.   ARGUMENT

Plaintiffs seeking to certify a class must satisfy each of the requirements of Fed. R. Civ. P. 23(a) and at least one of the three criteria for certification under Rule 23(b). *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 614–15 (1997). Rules 23(a) and 23(b)(2) are easily satisfied in this case. Defendant currently apply materially identical unlawful practices to each of the proposed class members. The named Plaintiff's claims are representative of the class's claims in all material respects. The named Plaintiff has a sufficiently live stake in the controversy to represent the class. And "the relief sought [will] perforce affect the entire class at once." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 361–62 (2011). If the practices alleged in this case are unlawful for one Plaintiff, they are necessarily unlawful for everyone else. Because Plaintiff satisfies the requirements of Rule 23(a) and Rule 23(b)(2), this Court should certify the class proposed above.

### A.   The Requirements of Rule 23(a) Are Met

Plaintiffs seeking class certification must meet four requirements under Rule 23(a):

> (1) [T]he class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

4

Fed. R. Civ. P. 23(a). These requirements, known respectively as numerosity, commonality, typicality, and adequacy, are each met in this case.

### 1. Numerosity

Although there is no set number of people needed to meet the numerosity requirement, a class of more than 40 is presumptively adequate. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (citing 1 *Newberg on Class Actions* § 3.05, at 3–25 (3d ed. 1992) for the proposition that a class of more than forty members "should raise a presumption that joinder is impracticable"). There is no serious dispute that the proposed class is sufficiently numerous to render joinder impracticable. Approximately 800 people are in the subset of test-takers "associated with Nepal" who have been targeted by NBME's discriminatory practices. Furthermore, a class action would not present any particular difficulties in management. The precise identities of the Class are easily ascertainable from records in the Defendant's possession, and requiring separate individual lawsuits would result in far greater manageability problems, such as duplicative discovery (including numerous depositions of the same people and repetitive production of documents), repeated adjudication of similar controversies in this Court (with the resultant risk of inconsistent judgments), and excessive costs for everyone involved. Thus, the Class easily satisfies the numerosity requirement.

### 2. Commonality

"To satisfy the commonality requirement under Rule 23(a)(2), class members must raise at least one contention that is central to the validity of each class member's

claims." *In re Deepwater Horizon*, 739 F.3d 790, 810 (5th Cir. 2014). The Rule asks whether the disputed questions are capable of class-wide proof or resolution; claims need not be identical. *Howard v. Liquidity Servs. Inc.*, 322 F.R.D. 103, 118 (D.D.C. 2017) ("[E]ven a single common question will do." (citation omitted)).

Although there need not be both common issues of law and fact under Rule 23(a), in this case there are. Among the most important, but not the only, common questions of fact is the question of whether NBME had any statistical evidence of irregular behavior that could justify disparate treatment on the basis of ethnicity and national origin. Another common question of fact is whether, if NBME had such evidence, NBME treated individuals "associated with Nepal" differently from other individuals for whom it had similar statistical evidence. The questions of law common to the members of the class include, without limitation, whether NBME can possibly show that its discriminatory treatment is justifiable under the law, whether NBME's handling of test scores "associated with Nepal" has had an unlawful disparate impact on the class, and whether NBME can possibly show that its explicit targeting of test-takers "associated with Nepal" did not constitute discrimination on the basis of ethnicity in violation of Section 1981.

Each of these questions must, by necessity, be resolved on a class-wide basis. The commonality requirement is met.

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[A] class

representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 531 U.S. 395, 401 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)). "The facts and claims of each class member do not have to be identical to support a finding of typicality; rather, typicality refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff." *Abraha v. Colonial Parking, Inc.*, No. 16-cv-680, 2020 WL 4432250, at *5 (D.D.C. July 31, 2020) (quoting *Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 52 (D.D.C. 2010). Rather, "typicality is satisfied when the plaintiffs' claims arise from the same course of conduct, series or events, or legal theories of other class members." *In re XM Satellite Radio Holdings Secs. Litig.*, 237 F.R.D. 13, 18 (D.D.C. 2006) (citation omitted).

Here, the facts and legal theories underlying the claims in this case are essentially identical between the Plaintiff and the class members. Dr. Giri took the USMLE and had her scores invalidated on the basis of her ethnicity, national origin, or both. She is within the "subset" defined by NBME's discriminatory policies, as is every other member of the proposed class. Dr. Giri is thus typical of the class. Dr. Giri's claims are the same as all other members of the subset: that the NBME violated her rights under Title VII, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981 by invalidating her USMLE test score on January 31, 2024 on the basis of her ethnicity or national origin. Thus, Rule 23(a)(3)'s typicality requirement is satisfied.

### 4. **Adequacy**

The adequacy analysis encompasses two separate inquiries: (1) whether the named Plaintiff has common interests with the other class members, and (2) whether the representative will adequately prosecute the action through qualified counsel. *E.g.*, *Abraha*, 2020 WL 4432250, at *6. Plaintiff and her counsel meet both of these requirements.

It is clear that the named Plaintiff has common interests with the other class members. As explained above, her claim is identical to the claims of other class members and she has no known conflicts of interest with any other class member. She will adequately protect the interests of absent class members.

Plaintiff is represented by Gerstein Harrow, LLP, and Fairmark Partners, LLP, as class counsel. Both firms are experienced in litigating class actions and will fairly and adequately represent the interests of the class. Gerstein Harrow and Fairmark attorneys have been lead counsel in many class actions. *See, e.g.*, *Houghton v. Leshner*, No. 22-cv-07781, 2023 WL 2485785, at *2 (N.D. Cal. Mar. 13, 2023) ("I also approve of Plaintiffs' selection of Gerstein Harrow LLP and Fairmark Partners LLP as Lead Counsel."); *Hernandez v. City of Houston*, No. 16-cv-3577, 2019 WL 2869157, at *4 (S.D. Tex. July 3, 2019) (approving as class counsel team including Charlie Gerstein, now of Gerstein Harrow).

### B.    The Requirements of Rule 23(b)(2) Are Met

Rule 23(b)(2) provides for class certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. Rule 23(b)(2). As to its claims for injunctive relief, the

Class easily satisfies Rule 23(b)(2)'s requirement that the opposing party acted on grounds that apply generally to the class as a whole so that injunctive relief can apply to the class as a whole. NBME created a special "subset" of people to whom unusually harsh procedures apply, and that whole subset (*i.e.*, the proposed class) deserves to be treated just as members of any other ethnic or national origin group would be treated under NBME's ordinary procedures. The relief Plaintiff seeks on behalf of the class—namely, an order directing NBME to revoke its January 31 test cancellations and return these test-takers to the situation they were in on January 30—would benefit the entire class in an effectively identical way.

The Class therefore seeks injunctive relief that, as described above, would apply to each class member equally. Because the putative Class challenges the Defendants' scheme through injunctive relief that would apply the same relief to every member, Rule 23(b)(2) class certification is appropriate and necessary. *See, e.g.*, *In re Veneman*, 309 F.3d 789, 792 (D.C. Cir. 2002) ("Rule 23(b)(2) certification is appropriate where plaintiffs seek declaratory or injunctive relief for class-wide injury."); *Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) (noting that requirements of Rule 23(b)(2) are "almost automatically satisfied in actions primarily seeking injunctive relief" for common legal claims).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court certify the proposed class action.

Respectfully submitted,

/s/ *Charles Gerstein*
Charles Gerstein
Emily Gerrick
GERSTEIN HARROW LLP
1001 G Street NW, Suite 400E
Washington, DC 20001
charlie@gerstein-harrow.com
(202) 670-4809

Jason Harrow
GERSTEIN HARROW LLP
12100 Wilshire Blvd Ste. 800
Los Angeles, CA 90025
jason@gerstein-harrow.com
(323) 744-5293

James Crooks
Kritika Tara Deb
FAIRMARK PARTNERS LLP
1001 G Street NW, Suite 400E
Washington, DC 20001
jamie@fairmarklaw.com
(619) 547-4182

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred on this Motion with Counsel for Defendant on Wednesday February 14, 2024. Counsel for Defendant expressed opposition to the Motion.

/s/ *Emily Gerrick*
Emily Gerrick
GERSTEIN HARROW LLP
1001 G Street NW, Suite 400E
Washington, DC 20001
emily@gerstein-harrow.com